# The State ex rel. &c. v. Rogers et al.

*Information in the Nature of Quo Warranto.*

1. *Presumption in favor of validity of legislative enactment.*—The presumption is that the legislature has not exceeded its powers, and unless it be clear that there has been a substantial departure from the Constitution the validity of the legislative act must be supported.

2. *Statutes; title of act.*—Under Const Art. 4, § 2, providing that each law shall contain but one subject, which shall be clearly expressed in its title, Act. Dec. 17, 1894, (Acts 1894-5 p. 186) entitled "An act to establish a board of revenue" for a certain county, is not invalid for the reason that, in fact, the act provides for the reconstruction and reformation of the board of revenue existing in such county.

3. *Same; amendment.*—Act Dec. 17, 1894, (Acts 1894-5 p. 186) relieving the judge of probate from official connection with the board of revenue of a certain county, and devolving on a chairman, selected by the board, and the clerk of the circuit court the duties performed by such judge, is not invalid for the reason that it does not set out the original act creating boards of revenue so amended, as directed in Const. Art. 4, § 2, providing that no law shall be amended by reference to its title only, but so much thereof as amended as shall be reenacted and published at length; the constitutional provision applying only to amendments which, without the presence of the original act, are unintelligible.

4. *Awarding contracts and passing upon claims by boards of revenue are ministerial acts.*—Act Dec. 17, 1894 (Acts 1894-5 p. 186) providing that no claim against the county shall be passed on and no contract awarded by the board of revenue of a certain county, save when the board and their clerk are in private, is not repugnant to Const. Art. 1,

[The State *ex rel.* &c. v. Rogers *et al.*]

§ 14, providing that all courts shall be open; the duties of the board in passing upon claims and in awarding contracts being administrative and not judicial.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JNO. R. TYSON.

This was a proceeding in the nature of *quo warranto*, instituted by the State of Alabama on the relation of Shirley Bragg against C. P. Rogers, jr., R. W. Russell, J. B. Mitchell, J. C. Wood, R, J. Stagers and J. H Sheppard. A complaint was filed in the circuit court of Lowndes county, April 24, 1895, and alleged that the defendants are unlawfully assuming to be the rightful board of revenue of Lowndes county, C. P. Rogers, jr., acting as chairman, and J. H. Sheppard acting as clerk thereof, administering the finances of the county, taking control of the property of the county, holding sessions of court as the board of revenue of the county; that so constituted they are not the lawful board of revenue of said county; and alleges that the true and legal board of revenue consists of A. E. Caffee, probate judge of said county, as rightful chairman and clerk, R. W. Russell, R. J. Stagers, J. B. Mitchell and J. C. Wood, and that they are entitled to the said offices by virtue of the statute and of their election to the same at a general election in said county, held on the 6th day of August, 1894, and the commissions issued to them thereunder.

The prayer of the complaint was that judgment be rendered against defendants, declaring that they were not entitled to the possession, exercise and control of the offices of the members of the board of revenue of Lowndes county, and that "A. E. Caffee, judge of probate, acting as chairman and clerk of said board consisting of R. W. Russell, R. J. Stagers, J. B. Mitchell and J. C. Woods, as members thereof and so constituted, be declared to be the legal and rightful court of the board of revenue of said Lowndes county, Alabama,"

The defendants filed their answer to the complaint of the relator, which was as follows: (1.) "That under the statute of Alabama approved Dec. 17th, 1894; and contained on pages 186, 187, 188, 189 of the Acts of Alabama 1894–95, and entitled "An act to establish a board of revenue for Lowndes county, and define the powers and duties of said board of revenue," A. E. Caffee

[The State *ex rel.* &c. v. Rogers *et al.*]

was retired from his official connection with such board and James B. Mitchell, R. W. Russell, J. C. Wood and R. J. Stagers confirmed as members of said board; and C. P. Rogers, jr., constituted the fifth member of said board, which said act is made a part of this plea. That said defendants are in the exercise of the powers and duties conferred on them by law and as changed by said statutes, and defendants plead said statute as a defense to this suit.''

(2.) ''That under the statute of Alabama, C. P. Rogers, jr., James B. Mitchell, R. W. Russell, J. C. Wood and R. J. Stagers consitute the board of revenue for Lowndes county Alabama, authorized by law to exercise all the powers and duties of said board of revenue.''

To this answer the relator demurred on the following grounds: 1st. Because said answer sets up no legal defense to the said complaint. 2nd. Because the said act of the legislature of Alabama of December, 1894, entitled ''An act to establish a board of revenue for Lowndes county, and to define the powers and duties of said board of revenue'' contained on page 186, 187, 188, 189 of the act of the legislature of Alabama of the session of 1894–95, is unconstitutional and void, in that it violates section 2, Article IV of the Constitution of Alabama. 3d. Because said act is unconstitutional and void in that it violates section 14, Article 1, of the Constitution of the State of Alabama.'' This demurrer was overruled, and to this ruling the plaintiff duly excepted, and declining to plead further, judgment was rendered in favor of the defendants. The relator or plaintiff prosecutes the present appeal, and assigns as error the judgment of the court overruling the demurrers, and the rendition of judgment for the defendants.

COOK & GORDON, for the appellant—In the first place, the title of said act is misleading in that it purports to be an original act, without reference to or connection with any other law, whereas it is, in the body of it, merely an amendment of the act of 1876, establishing said board of revenue for Lowndes county, and hence the subject of said law is not ''clearly expressed in its title'' according to the requirement in section 2, Article IV of the Constitution of this State.

See Acts 1894–5, pp. 186-7-8. That it is not an original, independent enactment, will be clearly seen by reading the sections numbered 1, 2, 3, 5, 6, of said act. And by the same sections and indeed the whole act it is clearly demonstrated that the said act was designed for the purpose of amending the act of March 7th, 1876, (the act establishing a board of revenue for Lowndes Co.) or causing the provisions thereof to be extended or conferred by reference to its title only; and there is no re-enactment and publication of "so much thereof as is amended, extended or conferred" by the act of November 16th, 1894.

The reference in the act of 1894, to the act of 1876 is in general words and the word "change" instead of the words "amend," "extend" or "confer" is used to express the amendment and alteration of the law of March 7th, 1876. Seemingly an effort to do *indirectly* that which the constitution forbids to be done *directly*. It would be easy to evade the operation of the requirements of Section 2, Article IV. of the Constitution in every instance of the amendment or extension or conferring of the provisions of an existing law by using the word "change," or some like term, in place of the words "amend," "extend" or "confer," if the use of such word be sufficient to take it out from the influence of the provisions of that section of the constitution. Cooley's Constitutional Limitations, 177, (4th, Ed.); *Ib*. p. 130 and note 1.

Our State authorities elucidating the force and effect of the provisions of Section 2, Article IV of our Constitution, in cases where applicable, are, in part, as follows:

*Tuskaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Stewart v. Commissioner*, 82 Ala. 209; *Bay Shell Road v. O'Donnell*, 87 Ala. 378; *Judson v. City of Bessemer*, 87 Ala. 240; *Stewart v. The State*, 100 Ala. 1; *Miller v. Berry*, 101 Ala. 531 and a like case decided at this term of this court.

It is further contended that this act is in violation of section 14 of Article 1 of the State Constitution: because of the last clause of section 7, of this act, to-wit: "Nor shall any claim be passed or any contract awarded save when the said board and their clerk are in private."

If this law stands what becomes of all those laws which impose upon the Probate Judge duties connected with the business of the board of revenue?

J. C. RICHARDSON and CHAS. A. WHITTEN for the appellees.—It is insisted that the words of section 7, viz: "Nor shall any claim be passed or any contract awarded save when the said board and their clerk are in private," render the act violative of section fourteen of Article one of the constitution. This clause which authorized the board of revenue to pass upon claims and award contracts in private may, which we do not admit, be unconstitutional, and the rest of the act remain in full force.

For it is settled that an unconstitutional provision in a statute renders such statute void only so far as that provision is concerned, if sufficient remains to effect its object without the aid of the invalid portion.—Cooley's Const. Lim. pp.211, *et seq.* ; 23 Am. and Eng. Enc., pp. 225-6 ; *Fisher v. McGirr*, 31 Am. Dec. 381 ; *Brown v. Betty*, 69 Am. Dec. 389, *Santo v. the State*, 63 Am. Dec. 487 ; *Kingston v. Towle*, 97 Am. Dec. 575 ; *Berry v. R. R. Co.*, 20 Am. Rep. 69.

It is also insisted that this act approved December 17th, 1894, is in conflict with section two of Article Four of the constitution. The style of the statute is in perfect accord with this constitutional amendment. The act contains but one subject, and that is clearly expressed in its title. There is no law revived, extended or conferred thereby. The act is an independent law, establishing a new board of revenue for Lowndes county, Alabama, and defining its powers and its duties.

An original, independent Act, perfect and complete in itself, not purporting to revise or amend any other Act referring to the same subject, yet itself operating a repeal of all laws and parts of laws in conflict with it, is not within the purview of the constitutional provision which we are considering, and it is not necessary that it should set out the law it repeals.—*Falconer v. Robinson*, 46 Ala. 340 ; *Ware v. St. Louis B. & R. Co.*, 47 Ala. 617.

This constitutional mandate is satisfied, when the particular subject expressed in the title, fairly construed, embraces every part of the subject-matter of the law. The object of the provision we are considering is to prevent deception by the inclusion in a bill of matters incongruous with the title, and to prevent the misleading of the General Assembly, and the community by the in-

tro luction into one Act of matters foreign to each other. —3 Brickell's Digest, 132, §§ 81-83; Cooley's Const. Lim. (5th Ed.) 152; *Judson v. the City of Bessemer,* 87 Ala. 242; *Childs v. State,* 97 Ala. 49.

This constitutional rule has no reference to repeals of older laws by implication, upon the enactment of new statutes in direct conflict with the older statutes.—Cooley's Const. Lim. (5th Ed.) 183, note four; *Riggs v. Brewer,* 64 Ala. 285.

A later statute, the evident intent of which is to furnish the exclusive rule governing a certain case, repeals by implication an earlier law on the same subject. Where two Acts are not in express terms repugnant, but the latter Act covers the whole subject-matter of the earlier, not purporting to amend it, and plainly shows that it was intended as a substitute for the earlier, it will operate as a repeal thereof, though all the provisions of the two may not be repugnant.—23 Am. & Eng. Enc. 484 (*c*), 485 (*b*).

A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, will operate to repeal the former statute, although no express words to that effect are used.—*Bartlett v. King,* 7 Am. Dec., p. 99; *State v. Wilson,* 82 Am. Dec.

And although a subsequent statute be not repugnant in its provisions to a former one, yet if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statutes.—*Rogers v. Watrous,* 58 Am. Dec., p. 100.

The enactment of one law is as much a repeal of all inconsistent laws as if those inconsistent laws had been repealed by express words.—*Davis v. State,* 61 Am. Dec., p. 133. The Act approved December 17, 1894, entitled "An Act to establish a board of revenue, for Lowndes county, and define the powers and duties of the said board of revenue, is not an Act amendatory of the Act approved March 7, 1889, and entitled, "An Act to elect the county board of commissioners of Lowndes county by the qualified voters of said county.

BRICKELL, C. J.—This was an information in the nature of a *quo warranto,* and its real purpose is to test the legality of the present organization of the board of e r n ue for the county of Lowndes. The board is or-

29

[The State *ex rel.* &c. v. Rogers *et al.*]

ganized in conformity to the provisions of an Act of the
last General Assembly, entitled "An Act to establish a
board of revenue for Lowndes county and define the
powers and duties of said board of revenue." (Pam.
Acts, 1894-5, p. 186.) The first section declares the
board of revenue for the county shall be so changed as
to consist of five members, to be elected at the biennial
election for state and county officers, and relieves the
judge of probate from all official connection with the
board. The second section declares the board as
changed, shall have and continue in the exercise of all
the powers and duties now conferred or thereafter con-
ferred on them by law, and that the board "is in no
wise changed from what it is now, except as herein pro-
vided." The third section declares that the four mem-
bers of the board elected at the preceding August
election, shall remain members, and that C. P.
Rogers, Jr., shall constitute the fifth member. The
term of office and compensation is fixed, and vacancies
are to be filled by the appointment of the governor.
The fourth section requires the board as changed to hold
its first meeting on the 22nd day of December, 1894, at
the office of the circuit clerk of the county, and fixes
that as their general place of meeting. At such meet-
ing, a chairman of the board was to be elected, holding
office during the term of the board; vacancies in the
chairmanship to be filled by the board. The fifth sec-
tion declares the clerk of the circuit court of the county,
clerk of the board and prescribes his duties and com-
pensation. The sixth section requires the sessions of
the board to be held at the time appointed by the exist-
ing law; and makes provision for extraordinary meet-
ings. The seventh section declares that claims against
the county may be passed on or contracts for the pay-
ment of money entered into, only at the regular meet-
ings; and at least three members must concur in the
allowance of a claim, or the making of a contract. If
there be division, the clerk is required as part of the
proceedings of the board to record the vote, and the last
clause is: "Nor shall any claim be passed on, or any
contract awarded, save when the said board and their
clerk are in private." The eighth section relates to the
issue of warrants for the payment of claims, the pay-

[The State *ex rel.* &c. v. Rogers *et al.*]

ment of jury certificates, and other matters not now of importance.

The primary insistence is, that the whole act is unconstitutional and void, because offensive to the clause of the second section of the Fourth Article of the Constitution, which, with exceptions, it is not necessary to enumerate, requires that "each law shall contain but one subject, which shall be clearly expressed in its title." The unity of the subject of the Act, is not, and could not be doubted. The insistence is, that the title does not fairly indicate or express it—that it expresses the purpose to originate or create a board of revenue, while there is no more than a reconstruction or reformation of the existing board; and that of consequence, the title is deceptive and misleading. The history and purposes of this constitutional mandate, are so well known and understood; the principles of interpretation which control in determining its application and operation, have been the subject of such repeated judicial consideration and decision, that there is no room or reason for further discussion or elucidation of them. In considering whether a legislative enactment is violative of this requirement, the courts proceed upon the presumption which obtains when considering whether any other limitation of the constitution has been violated; the presumption is, that the legislature has not exceeded its powers, and unless it be clear that there has been a substantial departure from the constitution, the validity of the legislative act must be supported.— *People v. Briggs*, 50 N. Y. 558.

Until 1861, in this State, following the common law, the title of an Act was not considered part of it; it did not control the words of the body of the Act however foreign or diverse to the title they may have been; if in themselves, the words were ambiguous, of doubtful import, to aid in their construction, resort was had to the title. *Bartlett v. Morris*, 9 Port 266. The constitution of 1861, was the origin of constitutional requirements relating to the titles of statutes. The words of the requirement, were: "Each law shall embrace but one subject, which shall be described in its title;" and in this form it passed into the constitution of 1865. The phraseology was changed by the constitution of 1868, to the present form. The difference in phraseology has not

[The State *ex rel.* &c. v. Rogers *et al.*]

caused any change or difference of construction; each clause being deemed significant of the same purposes, and each having the same operation.—*M. M. B. & L. Association v. Robinson*, 69 Ala 413. In the first of our cases, interpreting or construing this constitutional requirement, (*Ex parte Pollard*, 40 Ala. 98), it was said by A J. Walker, C. J. "The constitution requires that only one *subject* shall be embraced, and that it should be described in the title. *Subject* is a very indefinite word. A phrase may state the *subject* in a very general or indefinite manner, or with minute particularity. The *subject* of laws with such titles as the following, 'To adopt a penal code,' 'To adopt the common law of England in part,'' 'To adopt a code of laws,' 'To ratify the by-laws of a corporation,' would be expressed in a very general way, and very little knowledge of the specific provisions of the laws could be gleaned from the title; yet it would nevertheless be true that the subject was described in the title. * * * * * It is impossible to prescribe any standard of particularity for the legislature. The constitution has not attempted to do so. It exacts from the legislature an announcement in the title of the subject, but does not dictate any degree of particularity. This is a matter left to legislative discretion. The object of the constitutional provision was to prevent deception by the inclusion in a bill of matter incongruous with the title. The evil contemplated was not the generality and comprehensiveness of titles. Those faults do not tend to mislead or deceive." Again, "The question must always be, whether, taking from the title the subject, we can find anything in the Act which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism." The illustrations employed by the learned chief justice, may, or may not be, in all respects correct; but the principle asserted, that the constitutional requirement is not directed against the generality and comprehensiveness of titles; that all its purposes are satisfied when the law has but one general object, which is fairly indicated in its title, underlies all our numerous decisions upon this question. Because of the generality and comprehensiveness of the

title, if the general subject of the enactment is fairly indicated, sentence of nullity has not been pronounced. It is only when matter foreign to, or incongruous with the title has been introduced, that the title has been declared misleading and deceptive, and the enactment pronounced void. Nor is it necessary that the legislature adopt that which the courts may regard as the most appropriate or expressive title; the courts do not subject the titles to the rules of a nice verbal criticism, or often legislative action, as it has been properly said, would be frustrated, without fulfilling the intention of the framers of the constitution.

It may be conceded the title of the present act would be appropriate as the title of an act originating and creating a board of revenue. It is the title of the Act originating and creating the board of revenue for the county of Lowndes. (Pam. Acts, 1875-6, p. 383). But this does not involve the concession, that the title is so inappropriate as to offend the constitution, when it is employed as indicative of the subject of the reconstruction, reformation, or reconstitution of an existing board. The insistence hinges on the use of the word *establish*, which seems to be supposed incapable of proper use when employed in this connection, or of any other signification than to found and set up; yet, it is as often employed, to signify the putting or fixing on a firm basis, of putting in a settled or an efficient state or condition, an existing legal organization or institution, as it is to found or set up such organization or institution; the one meaning is as little recondite, abstruse, or obscure as the other. In *People v. Mahaney*, 13 Mich. 481, which is regarded in all courts as a leading and controlling authority in the exposition and application of the constitutional requirement, the title of the act was, "An act to establish a police government for the city of Detroit." It was said by Cooley, J. "The general purposes of this act is 'to establish a police government for the city of Detroit.' It would be difficult to express it better or more concisely than it is expressed by the title. To accomplish this general object, officers are authorized to be appointed, who shall take upon themselves certain duties before performed by other officers, as well as certain new duties now created, and who are authorized to appoint and govern a force. The act, with great particularity, pre-

scribes how this police government shall be rendered effectual; but this particularity cannot possibly be objectionable so long as it introduced nothing foreign and incongruous, but is confined to the means supposed to be important to the end indicated." The argument in support of the insistence of the appellant, proposes to deflect judicial inquiry from its appointed sphere, the consideration whether the title of the present act fairly indicates the one subject to which the act is devoted, to the consideration whether a more appropriate and expressive title could not have been selected, and this involves nice criticism of the meaning of the word *establish.* The discretion of the legislature in the selection of titles is to be invaded, and the presumption in favor of the validity of legislative acts is to be foregone and repelled.

The next insistence is, that the act offends the clause of the same section and article of the constitution which provides that "no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be reenacted and published at length." The act is in form original, and is in itself intelligible and complete. In some respects it modifies and changes the existing statutes from which the board of revenue of the county derived organization and existence. The more material of the changes is, relieving the judge of probate from official connection with the board, devolving on a chairman of the selection of the board, and on the clerk of the circuit court, the duties the judge had been required to perform. This clause of the constitution, like the preceding clause relating to titles has been the subject of frequent judicial construction. Its purposes and scope were explained by Cooley, J., in *People v. Mahaney, supra.*: "This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred

to but not re-published, was well calculated to mislead the careless as to its effect; and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent." In *Ex parte Pollard*, *supra*, it is said: "It was never intended by the constitution that every law which would affect some previous statute or variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original act are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the constitution." All the purposes of the present act could doubtless have been accomplished by an act strictly and in form amendatory—by setting out the existing statutes, amending and re-enacting them, but it is obvious the amendatory act would have been cumbersome, and not more intelligible than is the present act. Whether an amendatory act, or an original act should be employed, was matter of legislative judgment and discretion, which the courts cannot control. In *People v. Banks*, 67 N. Y. 575, it is said: "It is not necessary, in order to avoid a conflict with this article of the constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the constitution, or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty, and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the State. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the

terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the constitution was the incorporating into the acts of the legislature by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the legislature if fully understood.''

The remaining objection to the validity of the act, is directed to the last clause of the 7th section: "Nor shall any claim be passed on, or any contract awarded save when the said board and their clerk are in private.'' The contention is, that this clause is offensive to the declaration of the bill of rights. "That all courts shall be open.'' If the contention was colorable, it would perhaps be a duty to pass it with the observation, that it cannot be said the present record raises the question of the validity of the act in this respect, and until it was shown that the board had assembled in private, excluding from its presence some citizens having, or claiming the right to be present, the question could not arise. But the contention is not colorable, and to quiet the controversy, we have concluded to pass on it. In the making of contracts, and in the audit and allowance or rejection of claims, the board is not in the exercise of judicial power, nor sitting as a court. It is of peculiar constitution; it has powers which are in their nature judicial; other powers which are in their nature legislative—other powers, the powers of most frequent exercise, which are purely administrative or executive. It is in the exercise of mere administrative power in the making of contracts and in the allowance or rejection of claims.—*Board v. Barber*, 53 Ala. 539; *Clarke v. Jack*, 60 Ala. 271; *Jeffersonian Publishing Co. v. Hilliard*, 105 Ala. 576. Then it bears a close resemblance to the board of aldermen of a municipal corporation, or of directors of private corporations. It would, in the absence of statute, rest in its discretion, whether in the making of contracts, and the audit of claims, its deliberations should be private or public. As the pecuniary interests of the citizens and of the county, are brought into antagonism, there may be often, manifest propriety, in their deliberating in private, free from all interference,

and from all extraneous influences. The act it will be observed, affords no opportunity for avoiding responsibility for official action. It is only at the regular terms of the board, that contracts may be made or claims allowed; a majority must concur in the making of a contract or allowance of a claim. The making of a contract, or allowance of a claim, is matter which will appear of record. If there is division in the board, the clerk records the vote of each member. The records of the board are public records, at all suitable times open to the inspection of any citizen of the county. While the act compels the board to deliberate and act in private, it equally compels publicity of the result of the deliberations; securing official responsibility to the constituency of the board.

For the reasons we have given, we are satisfied the act is constitutional, and that the board of revenue is legally constituted and organized. The result is, the judgment of the circuit court must be affirmed.