# Shell *v.* The State.

## *Violating Prohibition Law.*

(Decided June 6, 1911.    56 South. 39.)

1. *Jury; Drawing and Summoning; Division.*—Construing together Local Acts 1907, p. 61, and Local Acts 1909, p. 316, it is held that the jury for the new division of the court so established should be drawn and summoned under the provisions of section 25 of the last named act. (Having reference to the establishment of two courts in St. Clair county, constituting the circuit court of said county.)

2. *Same; Right to Trial by; Constitutional and Statutory Provision.*—The Local Act of 1907, p. 61, and Act 1909, p. 316, when construed together do not, in any way, affect or violate the constitutional rights of trial by jury in St. Clair county.

3. *Statutes; Construction.*—A statute is to be construed so as to give it its full legislative meaning, if it be possible to do so.

4. *Appeal and Error; Discretion; Quashing Indictment.*—The rulings of the trial court as to quashing an indictment is within its discretion and not reviewable unless plainly abused.

5. *Same; Matters Reviewable.*—Where the pleading was really a plea in abatement, as shown by the ground set up in the motion, although it was denominated a motion to quash and abate or hold for naught the indictment, the court's ruling thereon is reviewable.

APPEAL from St. Clair Circuit Court.

Heard before Hon. JOHN W. INZER.

[Shell v. The State.]

Make Shell was convicted of violating the local option law, and he appeals. Affirmed.

The defendant entered a motion to quash the indictment on the ground that the jury commissioners, in making up the jury box for St. Clair county to be held in the courthouse at Ashville, ascertained and put into such jury box the names of all the men or persons qualified and competent to serve as jurors in said county, from which said jury box jurors are to be drawn and impaneled to serve as grand and petit jurors in such county, but that the jury commissioners, in preparing the box at Pell City, in said county, only put therein the names of persons duly qualified to serve as jurors from which the venire for grand and petit jurors were to be drawn for the circuit and other courts to be held at Pell City, in said county, the names of such as were competent to serve from certain specified precincts in said county and not from the body of the county, and that the grand jury which returned the indictment were not drawn from a box even purporting to contain all the names of the qualified persons in St. Clair county competent to do and perform jury duty. There are other grounds not necessary to be here set out.

W. A. STARNES, and W. M. and VICTOR SMITH, for appellant. A careful examination of Local Acts 1907, p. 61, will disclose the fact that no new court was thereby established at Pell City, for any territorial subdivision of St. Clair county. If the act be interpreted as so providing, then it must be held that the court at Ashville is also a territorial court, and hence, there is no such court in St. Clair, which is violative of section 144 of the Constitution. Triest v. Ensley, 106 Ala. 180. It seems clear, therefore, that the legislature had no intention of creating any new court for a territorial subdivision of

[Shell v. The State.]

the county, but simply created two divisions of an existing court, and for convenience's sake, fixed the venue of actions with reference to the precincts constituting the different provisions. This is strengthened by Acts 1909, p. 305. However, section 25 of the last named act has no application, as it was intended to operate for special courts with special officers. It, follows therefore that the court erred in drawing a jury from the territorial subdivision and that the defendant was denied his constitution rights of trial by jury from the county at large.

ROBERT C. BRICKELL, Attorney General, for the State.

DE GRAFFENRIED, J.—The act approved February 23, 1907, entitled "An act to provide for holding the circuit court in St. Clair county, Alabama, to divide said county into two judicial divisions, to regulate the said court and the jurisdiction of and the proceedings in and relating to the same" (Loc. Laws 1907, p. 61), divides the county of St. Clair into two judicial divisions, directs the holding of terms of court, not only at Ashville, the county seat, but also at Pell City, and provides that all civil actions which arise in, or where there is a single defendant who resides in, that portion of St. Clair county constituting the Southern judicial division shall be cognizable only in the circuit court of St. Clair county, sitting at Pell City; that all actions against non-residents of said county may be brought in either division of said court; and that all criminal cases in said county shall be indicted and tried in the judicial division where the offenses were committed. The act further provides that the clerk of the circuit court of the county shall keep a deputy with all the powers of a circuit clerk, and a branch office, and all of the records, dockets, and papers pertaining to cases triable in said division, at

Pell City. It also requires the sheriff to keep a deputy with all the powers of a sheriff, and an office with all of the dockets, records, and papers which by law the sheriff is required to keep, and which are connected with cases cognizable in said division, at Pell City; "that all summons or process issued in suits brought or pending in the division of the court to be held at Pell City shall be returnable to the court at Pell City, and that all sales of land made by the sheriff of St. Clair county shall be made in front of the courthouse door of that judicial division where the land is situated, and if said land is situated partly in both divisions, then such sale shall be made in front of the courthouse door of that judicial division in which the execution or order of sale was issued."

It is evident that in adopting the above act, the Legislature intended that the circuit court, when held at Pell City—a place where it could not be held, unless expressly so provided by law—should be as distinct from the same court when held at the county seat as if the Southern division of the county, was in fact, a separate county. When the circuit court sits in the Northern division of the county, it has no jurisdiction over causes of action triable in the Southern division, and vice versa; and for all practical purposes the two courts are as distinct as if they existed under two independent legislative acts. In legal contemplation, both courts are but the circuit court of the county; but for all the practical purposes of administering justice they are as distinct from each other as are the circuit courts of two different counties. The above being true, we are driven to the conclusion that the above act established a court to be held in a territorial subdivision of a county, within the meaning of section 25 of the act, to prescribe the qualifications of jurors, approved August 31, 1909 (Acts

Sp. Sess. 1909, p. 305). Pell City and the division to which it belongs were segregated from the jurisdiction of the circuit court of St. Clair county when sitting at Ashville, for the convenience of the citizens residing in that part of the county, and the manifest meaning of section 25 of the jury law is that all courts possessing jurisdiction of the trial of causes in only a portion of a county shall be restricted to that portion of the county in the selection of its grand and petit jurors. Under the ancient common law, the jury came from the vicinage, and section 5 of the jury law is but the reassertion, in the form of a statute, of an ancient common-law right.

On the 13th day of February, 1891 (see Acts 1890-91, p. 592), the Legislature passed a local law for Blount county (entitled "An act to *establish* an additional circuit court in the county of Blount and to provide a place for holding the same. The act divides Blount county into two parts, by certain meridian lines and streams running in a southerly direction, and provides that the jurisdiction of said court shall embrace all that part of Blount county lying west of said line; that all causes, civil and criminal, arising west of said line shall be cognizable, heard, and determined at the courthouse to be established in said territory; that all process issued in suits or proceedings arising in said territory shall be returnable at said courthouse; that the clerk of the circuit court shall keep a separate docket for causes arising within the jurisdiction of the court *established* by said act; that the grand and petit juries for said court shall be drawn and summoned only from said territory; that all sales of land under judicial process situated in said territory shall be made at said courthouse; and that the court shall be held by the judge of the circuit in which Blount county is embraced.

This act, in *Lowery v. State,* 103 Ala. 50, 15 South.
641, was attacked as being unconstitutional, and in that
case the Supreme Court says on the subject: "It is in-
sisted this act is unconstitutional, and the argument
made, in brief, is that the Legislature has power, under
the Constitution, to create inferior courts only, and that
this is not an inferior court, because the act contains no
provision by which its proceedings may be reviewed by
a higher tribunal. When the act is examined, it is seen
that it does not create a new court at all. Its purpose
and effect are to divide the territorial jurisdiction of the
circuit court, already established by the Constitution,
into two divisions, and to establish two places of hold-
ing that court in Blount county—one in each division—
and to confer upon each division exclusive jurisdiction
of all causes, civil and criminal, arising in its territory.
Combined, they constitute the circuit court of Blount
county, as established by the Constitution, and form a
part of the Ninth judicial circuit of Alabama." Every
word used by the Supreme Court in the above opinion,
involving as it did the division of a county into two judi-
cial divisions under an act entitled "An act to *establish*
an additional circuit court in the county of Blount," is
applicable to the case and the act now under considera-
tion. In Blount county, and, for the same reason, in
St. Clair county, the two courts, exercising exclusive
jurisdiction within their respective judicial divisions,
constitute the circuit court of the county.

The contention of appellant is that, as the act to pro-
vide for holding the circuit court in St. Clair county and
to divide the county into two judicial divisions created,
in contemplation of law, no *new* court, section 25 of the
jury law, which provides the method for drawing juries
"for a court established for and held in a territorial sub-
division of the county," does not apply to the circuit

court held at Pell City, and that it must obtain its juries from the body of the county under the general provisions of the law. The argument is made—and it is extremely technical—that the word "established," as used in said subdivision 25, means "to create" or to "make that which had not previous existence."

The true meaning of a word can only be determined by the context. A word used in one connection frequently has a different meaning when used in another or different connection. The various sections of the jury law relative to the selection of juries, other than section 25, have within their contemplation courts possessing jurisdiction all over a county; section 25 has within its contemplation courts possessing jurisdiction over only a part of a county. This being true, the meaning of "established," as used in said section 25, becomes apparent. "Upon few words could there be more room for argument than upon the word 'establish.' It is selected by Mr. Storey to show that it is by no means a correct rule to construe the same word in the same sense wherever it occurs in the same instrument. The peculiar sense in which it is used in any sentence is to be determined by the context." *Davenport v. Caldwell,* 10 S. C. 336; 11 Am. & Eng. Ency. Law, p. 353.

"The term 'establish' is not limited to the signification of 'to found' and 'set up,' for it is often used in the sense of putting in a settled or efficient state or condition an *existing legal organization or institution,* as it is 'to found' or 'set up' such organization or institution." 16 Cyc. p. 591.

The act to *establish* a board of revenue for Lowndes county created no new board of revenue. It simply reformed and reconstructed an existing board. The Constitution provides that each law shall contain but one subject-matter, which shall be clearly expressed in its

title, and the Supreme Court held that "an act to establish a board of revenue for Lowndes county" is not invalid for the reason that, in fact, the act provides for the reconstruction and reformation of the board· of revenue existing in such· county. *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. A. R. 520. The same conclusion was reached upon the same reasoning in *People v. Mahaney,* 13 Mich. 481, cited with approval in *State v. Rogers, supra,* upholding an "act to *establish* a police government for the city of Detroit."

The words "establish" and "prescribe" are often used as synonymous. *Ex parte Lothrop,* 118 U. S. 113, 6 Sup. Ct. 984, 30 L Ed. 108.

It is a cardinal rule in the interpretation of a statute to so construe it as to give to it, whenever possible, its full legislative meaning. Local laws establishing two places for holding terms of the circuit court in a county, dividing such county into judicial divisions, and conferring upon each division exclusive jurisdiction of all cases arising in its territory, have been in existence in this state for many years. Courts with jurisdiction of circuit courts limited to only a portion of a county are constantly being created, and to provide for all such courts, whether circuit courts, city courts, or courts of law and equity, and whether existing by virtue of the Constitution or by legislative enactment, said section 25 was enacted into law.

The judicial determination by our Supreme ·Court of the meaning of "established," as used in the·"Act to establish an additional circuit court for the county of Blount" (see *Lowery v. State, supra*), and in the "act to establish a board of revenue for Lowndes county" (see *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520, supra), had been the accepted legal meaning of that word for many years in Alabama prior to the

adoption by the Legislature of the present jury law at its special session in 1909. It therefore seems from reason and authority that the jury for the division of the circuit court of St. Clair county, known as the Pell City division, must be drawn under the provisions of said section 25.

There is nothing in the contention of appellant that our construction of the act which divides St. Clair county into judicial divisions in any way affects the constitutional right of trial by jury in that county. The local law for St. Clair county, construed in connection with the present jury law, is substantially the same law that became operative in Blount county in 1891. The Blount county law provides that jurors, grand and petit, for the circuit court *established* for the Western division of the county shall come from that division alone. The Supreme Court of Alabama, in the above case of *Lowery v. State*, held that the Blount county law was constitutional. Since the rendition of that opinion, a new constitution has been adopted for the state, and certainly the present Constitution contains no provision in any way affecting the integrity or the binding efficacy of that opinion. On the contrary, the present Constitution contains the same clauses with reference to trial by jury that were contained in the Constitution under which we lived in 1891, and the re-adoption of those clauses by the people in the present Constitution, after the rendition of that opinion, gives to it a position as an authority which it did not previously possess. We are therefore of the opinion that the primary court committed no error in refusing to abate the indictment in this case.

It has been frequently held that a motion to quash an indictment is in the irrevisable discretion of the trial court. In the present case, the appellant filed what was termed a motion "to quash, abate or hold for naught"

[Smith v. The State.]

the indictment, but the grounds set up in the motion showed that the "motion" was in reality a plea in abatement. The question was therefore properly before us for review.

There is no error in the record. The judgment of the court below is affirmed.

Affirmed.

*Violating Prohibition Law.*

