177 So. 162

## SPEER v. STATE.

### 7 Div. 297.

Court of Appeals of Alabama.

June 29, 1937.

Rehearing Denied Oct. 5, 1937.

See, also, Speer v. State (Ala.Sup.) 177 So. 167.

Frank B. Embry, of Pell City, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The appellant's counsel has filed his brief in accordance with Supreme Court Rule 10 (Code 1923, vol. 4, p. 882), and, as authorized by that rule, the statement of the case will be taken to be accurate and sufficient for this decision.

The indictment was returned against the defendant on August 14, 1936, charging robbery. He was arraigned and tried on August 27, 1936, at which time he was convicted and given a term of ten years in the penitentiary.

Before pleading to the indictment, the defendant filed motion to quash, which was duly sworn to, and in which it is alleged that the crime charged occurred in the southern judicial division of St. Clair county; that, by an act of the Legislature of Alabama, approved February 23, 1907 (Loc.Acts 1907, p. 61), said county was divided into two distinct and separate judicial divisions, one of which being designated and known as the northern judicial division at Ashville and the other as the southern judicial division at Pell City; that on the 30th day of May, 1936, the defendant was arrested under a warrant issued by the justice of peace of St. Clair county, which warrant was returnable to the southern judicial division of said county at Pell City; that on the 27th day of July, 1936, the regular term of the circuit court for St. Clair county was ordered by the two judges of said circuit to be held for the northern judicial division at Ashville, and that, in pursuance of such order, a grand jury was drawn, impaneled, organized and charged by the Honorable Alto V. Lee, one of the judges of the circuit court of St. Clair county, and which grand jury so drawn, and organized, held its session at Ashville in the northern judicial division; and, after completing its labors, investigations and deliberations, the said grand jury was by the said Alto V. Lee, as such judge, recessed and ordered to reconvene at Pell City in the southern judicial division of said county, at a later date for the purpose of making investiga-

tions of law violations in the southern judicial division of the county, and to perform such duties and functions as a grand jury, and that the grand jury did so recess and thereafter met and proceeded to make investigations at Pell City; that the grand jury docket of said grand jury, upon which the case against this defendant was docketed, and all other papers in reference to such case, including summonses for witnesses, witness certificates, attendance certificates of grand jurymen, all papers, books and records of any kind in connection with said charge against the defendant, were so written and prepared as to refer especially to "St. Clair County, southern judicial division at Pell City," and kept entirely separate and distinct from any papers, records or proceedings in reference to St. Clair county, northern judicial division at Ashville, or any crimes or transactions occurring in the jurisdiction of the northern judicial division; that said grand jury had been ordered to convene in and for the northern judicial division of the county at Ashville, and which was drawn at Ashville in and for such northern judicial division, and there sat, and from Ashville, issued all subpœnaes to witnesses to appear at Ashville, and did on its docket, and in every other respect, confine its sittings and activities, previous to the time of the attempted order of recess by the judge, exclusively and solely in relation of the northern judicial division of said county; that in accordance with the order of the court the said grand jury organized at Ashville reconvened as a grand jury at Pell City, and without, at any time, having been ordered, drawn, summoned, impaneled or sworn, or directed or authorized as a grand jury to sit at Pell City, did proceed to transact business.

Since the going into effect of the Act of the Legislature of February 23, 1907, dividing the county into two distinct and separate judicial divisions, and until the recessing order of the Presiding Judge at Ashville, the two judicial divisions were in all respects treated as being separate and apart, grand juries and petit juries for the respective divisions being always drawn, summoned, impaneled, and sworn at Ashville for the northern judicial division, and at Pell City for the southern judicial division, and confined their jurisdictions and activities entirely to matters within the venue of such particular district; all papers in reference to the two divisions, including jury records, circuit court records, probate court records, and all papers of every kind and character, were kept entirely separate and distinct in each of said judicial divisions, and in no instance or particular during such period of time were such separate judicial divisions treated as being anything other than two entirely distinct, separate subdivisions, and in all respects as if they, substantially and in effect, constituted and were two separate and distinct counties; no grand jury during such period of time, drawn, sworn and summoned or impaneled for the northern judicial division, had ever sat or attempted to sit in the southern judicial division at Pell City, or conversely, until the grand jury which returned the present indictment, and which was organized and impaneled at Ashville.

The motion further averred that, on account of the facts therein set forth, the grand jury which was so ordered, summoned, convened, impaneled and sworn and sat in and for the northern judicial division at Ashville on July 27, 1936, was wholly without jurisdiction or authority to reconvene and sit in the southern judicial division at Pell City, and there to investigate the charge against the defendant and to return the indictment returned in this cause.

In the report of the grand jury made for the northern judicial division, and filed on November 30, 1935, there appears the following statement: "We believe there are other matters that should be investigated by our body in the southern judicial division of St. Clair County and of the Circuit Court thereof, and we therefore request that we be recesses to reconvene in the southern judicial division thereof, at such time as may be designated by Your Honor."

Based upon this excerpt from the report, the court made an order recessing the grand jury at Ashville that they reconvene at Pell City on December 2, 1935.

The State demurred to the motion to quash, as filed by the defendant, setting up appropriate grounds; the demurrer was sustained, and the defendant pleaded not guilty.

As we read this record, and in view of the conclusion which we have reached, it will be unnecessary to state further the facts upon the main case. It being conceded on both sides that the question of real moment raised by this appeal is whether or not, under the various acts dividing St. Clair county into two judicial divi-

sions, a grand jury, summoned to attend, and impanelled, sworn and charged for service in the northern judicial division of the county at Ashville, can, by any order of the court, and without further drawing or impaneling, be recessed after completing their investigations of crimes in the northern judicial division, and reconvened for the southern judicial division at Pell City, and return an indictment at Pell City for a crime alleged to have been committed in the southern judicial division.

It is contended by the appellant that under the laws relating to juries, both grand and petit, grand juries must be summoned for a particular judicial division of the county, and that their authority and jurisdiction are confined to the judicial division for which they are so summoned, and that they have no jurisdiction or authority to be transported from one division to another, and that any indictment returned by a grand jury so summoned and impaneled and sitting for one division, and thereafter carried in a body, without any other step being taken, to another division of the county, is a complete nullity and should be quashed.

A decision of this question depends entirely upon constructions of the various acts of the Legislature, wherein St. Clair county had been divided into two judicial divisions, and provisions made for holding terms of the circuit court in each division, and fixing the jurisdiction of causes to be tried in said divisions at Ashville and Pell City.

In considering the proper construction to be placed upon these various acts, which will be hereafter mentioned, and in undertaking to determine the intention of the Legislature in their enactment, the court will take into consideration, not alone the verbiage of various acts, but also the geography and topography of the territory constituting the two divisions.

In this connection, it is known to us and, of course, to the legislative body, that a range of mountains, known as Backbone Mountain, divides the county almost equally, and that these mountains have been, at all times, very sparsely settled, and, therefore, it may be assumed that the Legislature had in mind the enactment of legislation fixing the sites of two courts, and defining the jurisdictions thereof, so as to meet the convenience of the people residing in the territory of the county.

The Constitutional Convention of 1901 (Journal of Conventions of 1903, p. 1381) by Ordinance No. 390 took cognizance of the situation in St. Clair county, and growing out of that ordinance subsequent Legislatures have undertaken to effect the relief desired for the convenience of the inhabitants of the territory.

The Legislature of 1903 passed an act (Loc.Laws 1903, p. 28) to this end which was declared unconstitutional in Ex parte Birmingham & Atlantic Ry. Co., 145 Ala. 514, 42 So. 118.

Following this, and to meet the objection of the Supreme Court, the Legislature of 1907 adopted an act, approved February 23, 1907 (Loc.Acts 1907, p. 61) entitled "An Act To provide for holding the circuit court in St. Clair county, Alabama; To divide said county into two judicial divisions to regulate the said court and the jurisdiction of and the proceedings in and relating to the same."

The act then proceeds to fix a time and place for the holding of the circuit court at Ashville and Pell City; to provide for a division of the county in judicial divisions, naming certain precincts constituting each judicial division; providing for the officers of the court in the two divisions, and the jurisdictions as to civil and criminal matters.

And section 5 of said act provides: "That all defendants in criminal cases in said county shall be indicted and tried in the judicial division where the offense with which they are charged was committed."

By section 11 of said act it is provided: "That both grand and petit jurors shall be drawn and summoned to serve in both divisions of said court in the same manner and by the same authority that grand and petit jurors are now summoned to serve in the circuit court of St. Clair county, but the time and place of the service of such jurors shall be designated by the officers drawing and summoning them."

By the enactment of the Jury Law of 1909 (Sp.Sess.Acts 1909, p. 316), the Jury Law in St. Clair county was changed, but subsequent to that act (Loc.Acts 1915, p. 218) the Legislature, again, enacted a local law for St. Clair county, whereby all of the juries in said county should be drawn from one box. This law was found not to have been enacted in accordance with the Constitution, and was, by the

582

circuit court, declared unconstitutional; whereupon the Legislature of 1935 adopted an act, approved June 3, 1935 (Loc.Acts 1935, p. 36), which act provides that it shall be the duty of the jury commissioners of St. Clair county to prepare and make but one jury box, in which jury box the names of all persons in the county qualified to serve as jurors, and not exempt by law to serve as such, shall be placed, and in manner as now provided by law for supplying such jury box, and from such jury box all juries and jurors shall be drawn to serve as such in all the courts of the northern and southern judicial divisions of St. Clair county, in which juries and jurors are required to serve and to be drawn, summoned and impaneled in the manner as now provided for the drawing, summoning and impaneling juries and jurors in courts of record in the State of Alabama; that the said jury box shall immediately after the passage of this act be refilled or made anew by the jury commission of St. Clair county, and as often thereafter as may be necessary, etc.

And provisions in said act which provide for keeping the box and the preparation of same are not necessary here to set out. But section 3 of said act provides that the true intent and meaning of this act being that juries and jurors for each of the judicial divisions of St. Clair county, as now provided by law, shall be drawn and taken from those persons in the county subject to jury duty under the law and not exempted therefrom, as is now done in counties where courts are held but one place in the county.

It may be observed that at the time of the passage of the last-named act there were no such officials as jury commissioners, but such offices had been abolished, and in the place thereof there had been constituted a jury board. We think that this difference is immaterial, and in a consideration of this case we may use the term "Jury Board" and "Jury Commissioners" as interchangeable.

We are clear to the conclusion that all of these various acts still remaining as valid laws had the effect of dividing St. Clair county into two judicial divisions as completely as if they were in separate counties, except for the one fact, for the convenience of the proper officials, all of the juries to be used in the trial of cases or in attendance upon the court would be drawn from one jury box. But at the time

of the drawing of such juries: "The time and place of the service of such jurors should be designated by the officers drawing and summoning them." There is nothing in the law, which we have found, which would authorize a judge of the circuit court, by entering an order in the court of one judicial division, to transport by such order a grand jury from one division to another in such manner as to render it a grand jury within the jurisdiction to which it was transported. The judge presiding over the circuit court is not "the officer drawing and summoning" the grand jury.

In the case of Shell v. State, 2 Ala.App. 207, 56 So. 39, 41, De Graffenried, Judge, went to considerable length and discussion as to the act dividing St. Clair county into judicial divisions, and in his opinion, after setting out provisions of the Act of February 23, 1907, it is observed: "It is evident that in adopting the above act, the Legislature intended that the circuit court, when held at Pell City—a place where it could not be held, unless expressly so provided by law—should be as distinct from the same court when held at the county seat as if the Southern division of the county was, in fact, a separate county."

All of our decisions, as far as we are able to find, proceed upon the theory that the effect of acts dividing counties into jurisdictions wherein circuit courts are required to hold sessions and in confining the jurisdiction of causes by territorial limitations is, in effect, setting up separate jurisdictions within the same counties as effectually as if two counties had been made instead of one. Lowery v. State, 103 Ala. 50, 15 So. 641; Evans v. State, 201 Ala. 693, 79 So. 240; Kuykendall v. State, 16 Ala.App. 197, 76 So. 487; Harris v. State, 16 Ala.App. 509, 79 So. 270; Hardeman v. State, 19 Ala.App. 563, 99 So. 53; Porter v. State, 20 Ala.App. 74, 101 So. 97.

In the Shell Case, supra, the so-called motion to quash was taken and considered as a proper plea in abatement, and in this case we do the same; the necessary allegations challenging the jurisdiction of the grand jury sitting at Pell City were sufficiently alleged, and the demurrer of State admitted the truth of the allegations. But, aside from that, the grand jury organized for the circuit court at Ashville, and thereby becoming a part of that Court, was not a part of the court at Pell City, and therefore its acts were without authority

of law, and void. They had no more power as a grand jury at Pell City than they would have had in another county in the circuit.

In view of section 3 of the act adopting the Code of 1923, approved August 17, 1923 (Gen.Acts 1923, p. 127), which provides that: "No statute which applies or relates or which was intended to apply or relate to but one county, * * * though such statute might, strictly speaking, be classed as a general law, shall be repealed or affected in any manner by the adoption of this Code," etc., the writer of this opinion is of the opinion that section 8665 of the Code of 1923 has no application and does not affect the Local Acts of 1907 dividing St. Clair county into judicial divisions.

The foregoing was the opinion of the writer, but Rice, Judge, was of the opinion that, not withstanding the facts stated, Supreme Court Rule 45 (Code 1923, vol. 4, p. 895) was a complete answer; and that, as the defendant had been indicted by a grand jury organized at Ashville, he had no right to complain; and that he had been denied no substantial rights.

Whereupon, and being unable to agree, there was submitted to the Supreme Court the following inquiry:

"To the Chief Justice and the Associate Justice of the Supreme Court:

"Greetings:

"Under the provisions of section 7311 of the Code of 1923, I hereby certify a question of law as to which the Judges of the Court of Appeals are unable to reach an unanimous conclusion. The question here certified is involved in the case of Ollie Speer v. State, (7 Div. 297, St. Clair Circuit Court), appealed to this Court and now pending [ante, p. 579, 177 So. 162].

"The defendant was tried on an indictment for felony returned into Court at Pell City in St. Clair County. The grand jury was drawn and summoned to sit at Ashville by the Jury Board from the jury box. When it had finished its investigations at Ashville it requested that it be allowed to continue its sitting at Pell City, and an order was made by the Court ordering the grand jury to reconvene at Pell City for the purpose of considering matters and things, including violations of the criminal law occurring in the precincts in the southern judicial division of St. Clair County.

"At the time of the drawing of the grand jury it was not designated by the officers drawing same, that it should sit at Pell City, but was drawn for the term of the Court to be held at Ashville. A full statement will be found in the sub-joined opinion (transmitted herewith).

"A motion to quash the indictment in this case was made at the trial; this motion was demurred to; the demurrer was overruled and the defendant convicted.

"The decision in this case is important to the administration of justice in St. Clair County. The concrete question is: Can a grand jury organized for service for the northern judicial division of St. Clair County be transferred to the southern judicial division to sit at Pell City, and by such an order acquire jurisdiction over crimes committed in the southern judicial division, and if this is error, can it be cured by Supreme Court Rule 45 [Code 1923, vol. 4, p. 895]?

"Respectfully submitted,

"Wm. H. Samford, Judge.

"For the information of the Supreme Court, I am herewith transmitting the views of one of the members of this Court on the question certified, but, as to which this Court has not been able to reach an unanimous opinion.

"This the 22nd day of June, 1937."

To which was returned the following reply:

"Per Curiam.

"Under the provision of the local act approved June 3, 1935, Loc.Acts 1935, p. 36, there is but one jury box for St. Clair county, from which all jurors are drawn to serve in the two divisions of the circuit court. The grand jury drawn from said box and duly impaneled to serve at Ashville was the grand jury of St. Clair county, and, when the circuit court recessed said grand jury and ordered it to reconvene at Pell City, a place in which the circuit court of St. Clair county was authorized to convene, the court proceeded in accordance with provisions of section 8665 of the Code, which provides: 'There shall be empaneled in every county having less

than fifty thousand population, not less than two grand juries in every year, and when they have completed their labors, in its discretion the court may permit them to take a recess subject to the call of the judge of the circuit court, or Chief justice of the supreme court, and may be reassembled *at any place where the circuit court of the county is to be held.*' (Italics supplied.)

"The circuit court, whether it convened at Ashville or at Pell City, was the circuit court of St. Clair county. Const.1901, § 142.

"We are therefore of opinion that the order and proceeding of the circuit court and the proceedings of the grand jury reconvened at Pell City were regular, and that the circuit court correctly so ruled. Kilpatrick v. State, 213 Ala. 358, 104 So. 656. Let this opinion be certified to the Court of Appeals.

"All the Justices concur."

This, of course, under section 7311 of the Code of 1923, becomes the decision of this court on this question in this case.

■ On the trial, the defendant set up an *alibi* and sought to prove the same by a number of witnesses who testified he was in the city of Birmingham near his home, at or about the time of the commission of the alleged offense. The defendant did not testify as a witness. After this evidence was admitted, the State introduced a witness, who was an officer in Birmingham, who, over the objections and exceptions of the defendant, testified: "Well, at the time I talked to him (the defendant) he had been identified by Mr. Cornett, and I told him Mr. Cornett had identified him as robbing this toll bridge up here on April 16th—the night of April 16th—and asked him where he was at that time, and he told me he was at a convict camp at Trussville, serving time."

This testimony was admissible as tending to disprove the alibi set up by the defendant, and as tending to prove that the alibi testified to by his witnesses was an afterthought. Langston v. State, 24 Ala.App. 341, 135 So. 593.

There are no other questions of merit involved in this appeal, and, finding no error, the judgment is affirmed.

Affirmed.